# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5092 | **DATE** | 11/16/2004 |
| **CASE TITLE** | Annecca Inc. vs. Lexent, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Lexent is entitled to summary judgment as to the unjust enrichment claim. Annecca is ordered to pay Lexent the net sum of $50,147. Lexent is entitled to a judgment as a matter of law in the amount of $282,277.47 on Count II of its Counterclaim. Annecca's equitable estoppel defense as to Counts II and IV of Lexent's Counterclaims fails as a matter of law, and its Rule 56 motion is denied. (83-1) Lexent's motion for summary judgment as to Count IV is granted, and denied as to Count III. (80-1) Lexent is entitled to a judgment as a matter of law in the amount of $50,147 on Count IV. In sum, Annecca is ordered to pay Lexent $332,424.47 on it s Counterclaim. This is a final judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | NOV 17 2004 | |
| | Notified counsel by telephone. | | | date docketed | **93** |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 11/16/2004 | |
| SN | courtroom deputy's initials | 2004 NOV 15 PM 3: 11 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | SN | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANNECCA INC., et al.,            )
                                 )
                Plaintiff,       )
                                 )
        v.                       )   No. 02 C 5092
                                 )
LEXENT, INC.,                    )
                                 )
                Defendant.       )

**DOCKETED**

**NOV 1 7 2004**

<u>MEMORANDUM OPINION AND ORDER</u>

Following this Court's grant of summary judgment in favor of

Lexent, Inc. ("Lexent") as to all claims asserted against it by

Annecca, Inc. and its co-plaintiffs[1] (collectively "Annecca,"

treated after this sentence as a singular noun for convenience),

Lexent has moved for summary judgment under Fed. R. Civ. P.

("Rule") 56 as to its Counterclaim.[2]  Lexent seeks through the

Counterclaim to recover expenses it incurred in preparing to

---

[1] Those co-plaintiffs comprise T.N.C., Inc., U.S. Electric,
LLC, The Michael J. Annecca Living Trust, Inc., Michael Annecca
and Andrew Denon.

[2] This District Court's LR 56.1 implements Rule 56 by
requiring parties to submit evidentiary statements and responses
to such statements, to highlight which facts are disputed and
which are agreed upon.  This opinion cites to undisputed portions
of Lexent's LR 56.1 statement as "L. St. ¶--" and to undisputed
portions of Annecca's LR 56.1 statement as "A. St. ¶--."  "L."
and "A." designations are also used to refer to all other
documents submitted by the parties.  Because this opinion cites
only to those Lexent exhibits that are attached to the affidavit
of Scott Mortman, not to any of those attached to the affidavit
of Dennis Orr, "L. Ex." refers to exhibits attached to the
Mortman affidavit.

93

acquire ownership interests in Annecca, Inc. and its affiliated companies pursuant to a 29-page Stock Purchase Agreement ("Agreement"). Lexent terminated the Agreement before completing the acquisition because of Annecca's failure to fulfill conditions precedent as to (1) Annecca's net worth and (2) the accuracy of material representations and warranties in the Agreement.

Counterclaim Counts I and II seek to recover fees that Lexent incurred in reliance on Annecca's anticipated fulfillment of its obligations under the Agreement on alternative theories that Annecca's failure to do so (1) gives rise to a claim under the Agreement's indemnification provision or (2) constitutes a breach of contract. Counts III and IV are based on Annecca's refusal to return certain computer equipment that Lexent provided Annecca in anticipation of the acquisition. Annecca has cross-moved for summary judgment as to the latter two counts on the ground that Lexent is equitably estopped from asserting claims relating to that equipment. With Lexent's motion now having been fully briefed,[3] this opinion deals with the Counterclaim counts

_____

[3]As this Court's unpublished June 28, 2004 memorandum opinion and order ("Opinion II," 2004 WL 1470150 (N.D.Ill. June 28)) pointed out, Annecca's counsel expended far more than half of their 38-page filing (which was supposed to be devoted entirely to Lexent's motion) in a delayed attack on this Court's March 5, 204 Rule 56 rejection of Annecca's claims. Opinion II denied that motion for reconsideration, and pursuant to its directive the parties' briefing on the current motion then concluded with a proper and more limited focus.

sequentially.

## Rule 56 Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (<u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (<u>id</u>.). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

Where parties have cross-moved for summary judgment, the same principles apply (<u>Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.</u>, 293 F.3d 402, 404 (7th Cir. 2002)). That is, summary judgment is proper in favor of either movant if the record, when viewed from the nonmovant's perspective, demonstrates that there is no genuine issue of material fact and that the movant would be entitled to a judgment as a matter of law (<u>id.</u>).

## Background

This Court's opinion issued in March of this year ("Opinion," 307 F. Supp.2d 999, 1003-05) sets out the background of the parties' dispute in some detail. There being no need to repeat that discussion in its entirety, the facts having relevance to the current motions are set out below.

On February 14, 2001 Lexent executed the Agreement with all of the owners of the stock of Annecca, Inc. and its related companies, pursuant to which Lexent was to acquire all of the ownership interests in those entities (again for convenience collectivized as "Annecca") (L. St. ¶9; Agreement Art. II). Before entering into the Agreement Lexent had engaged the services of the law firm of Schenck, Price, Smith & King, LLP ("Schenck Price") to assist in satisfying its obligations under the Agreement (L. St. ¶21).

To perform the necessary due diligence review and to audit Annecca's financial statements, books and records, Lexent retained the services of the PricewaterhouseCoopers LLP ("Pricewaterhouse") accounting firm (L. St. ¶23). Pricewaterhouse began its in-depth review of Annecca's financial records, and on February 23, 2001 it sent Lexent a memorandum outlining some "preliminary observations" as to its analysis (A. Ex. E). That memorandum set out some perceived flaws in Annecca's records and financial statements, stating in part that

"[d]ue to the focus on growth, there has not been a focus on accounting policies, procedures, controls and general organization of financial source documents" (id.), and concluding with a promise to continue the analysis "as more information becomes available."

While the parties were still in the executory phase of the Agreement, Lexent requested that Annecca's computer server be replaced because of its belief that the existing server was inadequate to perform the operations that Lexent anticipated to be necessary following the acquisition (A. St. ¶11). Lexent purchased various pieces of computer equipment, at least some of which were delivered to Annecca (A. St. ¶12; L. Ex. D). Annecca hired an outside consultant to install the new equipment (L. St. ¶27). After installing the new equipment, which included two new network servers and related hardware and software, the consultant discarded various computer components that had been part of Annecca's old computer server (L. St. ¶28; A. St. ¶¶14, 15).

On March 29, 2001 Lexent notified Annecca by letter that it was exercising its Agreement §9.1(b) termination option, asserting two main reasons for its choice (Opinion at 1004-05):

1. Annecca's net worth was "very substantially and materially less than the $9 million threshold at the end of 2000," as required by the Agreement.

2. Annecca's records and financial statements were so incomplete, and in some instances inaccurate, that they could not provide Lexent with a sufficient understanding of Annecca's current financial condition.

Two weeks later, on April 16, 2001, Lexent demanded that Annecca

reimburse it for the cost of the computer equipment Lexent had provided (L. St. ¶29). In response Annecca sent Lexent a letter stating that it would not return the new computer equipment, as the equipment was "in operation and critical to [Annecca's] business" (L. Ex. D). It did state however that if Lexent wanted the equipment returned it would have to pay Annecca for the cost of installing the equipment provided by Lexent and for the cost of obtaining replacement equipment (L. St. ¶30; L. Ex. D). To date Lexent has not received any payment for the equipment, which is still being used by Annecca (L. St. ¶31).

Annecca commenced this lawsuit in July 2002, asserting that Lexent had wrongfully terminated the Agreement. Lexent in turn asserted various counterclaims and moved for summary judgment as to Annecca's claims. Applying New York law as called for by the Agreement §11.9 choice of law provision, this Court granted Lexent's motion for summary judgment as to Annecca's claims, finding that Lexent was entitled to terminate the Agreement because Annecca had failed to satisfy certain conditions precedent (Opinion at 1005-09) and because offering Annecca an opportunity to cure those failures would have been futile (Opinion at 1009-12).

Of particular relevance here, Opinion at 1006-07 held that Annecca had failed to satisfy the conditions precedent (1) that Annecca have a net worth of $9 million as of the closing date

(Agreement §7.11) and (2) that all of Annecca's representations and warranties would have to be true, complete and correct as of the closing date (Agreement §7.1). Opinion at 1007-08 further held that the failure of the latter condition occurred because Annecca had both (1) failed to produce 2000 Financial Statements (a defined term) that complied with the requirements of Agreement §4.4(a)(i) and (2) "clearly breached its Agreement §4.4(a)(ii) representation that its 'books, records and accounts ... accurately and fairly reflect [its] transactions, assets and liabilities in accordance with GAAP."

### Lexent's Claims for Indemnification and Breach of Contract

Armed with the Opinion, Lexent now attempts to recover the expenses that it incurred in pursuing the failed acquisition under alternative theories of contractual indemnification and breach of contract.[4] It advances three bases for its recovery under either of those theories (L. Mem. 4):

1.   Annecca's failure to meet the Agreement §7.11 $9 million net worth condition precedent;

2.   Annecca's failure to satisfy the condition precedent in Agreement §7.1 that all of its representations and

---

[4]Because, as will be seen, Annecca's breaches of contract directly call into play the indemnification provisions of Agreement §10.2(a), this opinion focuses solely on Lexent's contractual indemnification claim. That claim really swallows up the other alternative theory.

warranties had to be true, correct and complete as of the closing date; and

3. Annecca's breach of the representations in Agreement §§4.4(a)(i) and 4.4(a)(ii) as to its financial statements and its books, records and accounts.

Annecca Mem. 6-7 responds that Annecca's failure to fulfill conditions precedent cannot serve as the basis for liability under either of those theories.[5] Annecca Mem. 31-32 argues further that even if Lexent is entitled to damages for Annecca's breach of the representation concerning the GAAP-compliance of its books, records and accounts, Lexent learned of the untruth of that representation soon after entering into the Agreement and cannot recover expenses that it incurred thereafter.

---

[5]Annecca Mem. 28-29 also urges that the indemnification claim is untimely because Lexent failed to notify Annecca within 10 days of making its claim as required by Agreement §10.2(b). Not so, for that provision expressly requires that Annecca incur a loss caused by Lexent's delay in notifying Annecca of its claim as a precondition to Annecca's avoidance of liability. Quite apart from the obvious fact that Annecca had notice of the grounds for Lexent's claim when Lexent terminated the Agreement on March 29, 2001 (something that alone renders Annecca's contention too myopic to be credited), Annecca has produced no evidence of any loss caused by the alleged delay. It says only that the claimed delay assertedly harmed it by "preventing a prompt and immediate investigation to prepare its defense and/or to be in a position to settle the claim so that litigation could have been minimized" (Annecca Mem. 29). But that assertion is patently empty of merit. Annecca had no difficulty in commencing this lawsuit over a year after Lexent's termination of the Agreement, and it has had no problem in advancing its arguments here (their lack of success cannot be ascribed to any delay on Lexent's part).

In any event, the parties agree that New York law provides the rules of decision here under the choice of law provision in Agreement §11.9. As was also the case in the Opinion, this opinion looks to that source of law.

Annecca's Duty To Indemnify Lexent

Here is the relevant part of Agreement §10.2(a), which the parties agree (perhaps their only area of agreement) sets the operative standard for Lexent's indemnification claim:

> (a) Indemnity by Sellers. In addition to any other indemnification obligations of Sellers expressly provided for hereunder, Sellers, jointly and severally, agree to indemnify and hold harmless Buyer from and against any loss, damage or expense (including reasonable attorneys' fees only to the extent incurred in the enforcement and/or defense of any Buyer's Claim as hereinafter defined) suffered by Buyer resulting from: (i) any material inaccuracy in or breach of any of the representations, warranties, covenants or agreements made by Seller herein....

And under New York law this court is obligated to read that indemnification provision in conjunction with all other provisions in the Agreement (Promuto v. Waste Mgmt., Inc., 44 F. Supp.2d 628, 650 (S.D.N.Y. 1999)).

Annecca begins the portion of its briefing that actually speaks to the issues relevant to Lexent's motion by stressing that while Agreement §10.2 refers to "representations, warranties, covenants, [and] agreements," it makes no mention of conditions precedent (A. Mem. 6-9). That section's silence in that respect, while conditions precedent are specifically

referred to elsewhere in the document (e.g., Agreement Art. VII
is entitled "Conditions Precedent to the Obligations of Buyer"),
indicates that Agreement §10.2(a) did not extend to
indemnification for "loss, damage or expense...suffered by Buyer
[Lexent] resulting from" conditions precedent as such (Tokyo
Tanker Co. v. Etra Shipping Corp., 536 N.Y.S.2d 75, 76 (App. Div.
1989)). Hence it is true that Lexent is not entitled to recovery
under Agreement §10.2(a) based only on Annecca's failure to
fulfill the condition precedent set out in Agreement §7.11, which
requires the Annecca companies to have at least $9 million in net
worth and is framed solely as a condition precedent to closing.

But Opinion at 1007 also held that Annecca failed to satisfy
the Agreement §7.1 condition precedent that all of its
representations and warranties had to be true, complete and
correct as of the closing date. And as stated earlier, Opinion
at 1008 held that the failure of that condition resulted from
Annecca's breach of its Agreement §§4.4(a)(i) and 4.4(a)(ii)
representations as to its Financial Statements and its books,
records and accounts.

So in those respects Annecca's attempted parsing of
Agreement §10.2(a) -- failures of conditions precedent are not
encompassed within its terms, while breaches of representations,
warranties or agreements are -- collapses of its own weight.
Without question Annecca was guilty of such breaches. And

10

equally without question, such breaches expressly triggered the Agreement §10.2(a) indemnification provision, so that Annecca is obligated to indemnify Lexent for the losses Lexent suffered as a result.

In that respect Lexent seeks to recover as "loss, damage or expense" its expenditures that resulted from Annecca's breaches in the sense that they were "made fruitless as an investment and bec[a]me a 'dead loss'" when Lexent terminated the Agreement because of the breaches (see 11 Arthur L. Corbin, Corbin on Contracts §1035, at 184 (interim ed. 2002)). And Lexent's entitlement to such indemnification is not at all impaired by the fact that another of the grounds for termination was the already-discussed shortfall in net worth that would not alone have invoked the operation of Agreement §10.2(a).

Quite apart from Annecca's not having framed its objection in that way, it cannot be argued that the termination was solely attributable to the net worth deficiency (as already stated, a condition precedent to closing), so that indemnification is somehow not called for. To the contrary, if anything the nonconformity of Annecca's financial records was the type of violation that was far more likely to be a deal breaker. After all, if an acquired company's financial statements are solidly reliable so that the acquiring company knows it is getting what it bargained for, it might well opt to consummate the acquisition

while calling for a reduction in the purchase price to account for any deficiency in the bargained-for net worth. But conversely, the demonstrated unreliability of an acquired company's financial statements, as disclosed by the detailed Pricewaterhouse analysis in this case, renders wholly uncertain the earnings capacity that an acquirer typically counts upon in contracting for a takeover. Thus the failures of the type Lexent encountered on Annecca's part in that respect cast a fatal pall on consummating the acquisition, irrespective of the prospect of a price reduction.

Again Annecca has not advanced an argument of the kind just rejected, so what has been said in the preceding paragraph is not essential to the decision here. But it confirms that neither any material fact nor any reasonable inference from the facts casts doubt on Lexent's right to indemnification by reason of Annecca's breaches of the representations, warranties and agreements contained in the Agreement. It attempts to limit its liability by arguing that Lexent failed to mitigate its damages when, following receipt of the Pricewaterhouse memorandum of February 23, 2001, it "plodded ahead...not indicating that the deal was to be later abandoned (until the last possible moment)" (A. Mem. 32). That argument fails on more than one level.

For one thing, it assumes that Lexent had a duty to terminate the Agreement when it received that memorandum, which

12

contained Pricewaterhouse's preliminary observations.  No such
duty existed -- indeed, it is plain from Annecca's stance in this
litigation that any such effort at an early termination without
the support of hard evidence to justify it would have run head on
into Annecca's vigorous attack (and an infinitely more
supportable one) charging Lexent with having breached the
Agreement.  In short, Lexent cannot be faulted for choosing to
continue to move toward completion of the acquisition until it
became unmistakably clear that Annecca could not fulfill its
obligations, particularly when the alternative was to risk being
held liable for breach of the Agreement.

Relatedly, implicit in Annecca's argument that Lexent should
have called a halt to the acquisition immediately after February
23, 2001 is that for some reason it continued to incur very large
professional fees until it ultimately did terminate the Agreement
on March 29.  Can Annecca and its counsel really suggest with a
straight face that Lexent continued to lay out in excess of a
quarter million dollars to legal and accounting professionals in
the hope that it could later bring a claim against Annecca to
recapture those outlays?  Of course not.  Any rational evaluation
of Lexent's continued employment of Schenck Price and
Pricewaterhouse reveals precisely the opposite: Lexent was then
pursuing the acquisition in good faith, expecting that the
closing would occur as set forth in the Agreement.

Because there is thus no merit to Annecca's defense of an asserted failure to mitigate damages, it is obligated under Agreement §10.2(a) to indemnify Lexent for all of the professional fees that fit within that indemnification provision. But a review of Lexent's claims in that respect reveals one element of overkill -- fees charged by Schenck Price for work performed during the period beginning January 26, 2001 and ending February 13, 2001, a time period before the Agreement was executed on February 14 (L. Ex. A). By definition those expenses, incurred before the Agreement was entered into, cannot be bootstrapped into a recovery under the terms of Agreement §10.2(a) (see 3 E. Allan Farnsworth, Farnsworth on Contracts §12.16, at 280 & n.2 (3d ed. 2004)), even though the expenditures were incurred directly for the purpose of entering into the Agreement (Drysdale v. Woerth, 153 F. Supp.2d 678, 684 (E.D.Pa. 2001)).

In economic terms those were unrecoverable sunk costs (it should be noted that Lexent has never asserted a claim of fraud in the inducement, which if it were established might call for a different answer). Lexent is therefore not entitled to recoup any expenditures that it incurred before entering into the Agreement on February 14. Those expenses appear, from the Schenck Price invoices submitted by Lexent, to amount to $12,075 (L. Ex. A). When those charges are subtracted from Lexent's

14

claim, the expenses for which it _is_ entitled to indemnification
amount to $282,277.47.

<u>Lexent's Right to Compensation for Computer Equipment</u>

Lexent's remaining Counterclaim counts relate to Annecca's
retention of computer equipment provided in anticipation of the
acquisition.  Lexent urges alternatively (1) that Annecca's
refusal to return the equipment or to reimburse Lexent for its
cost constitutes unlawful conversion or (2) that Annecca has been
unjustly enriched and must compensate Lexent for that equipment,
which it continues to use.  Annecca has in turn filed a cross-
motion for summary judgment as to those counts, arguing that the
doctrine of equitable estoppel bars Lexent from asserting them

As to the source of law to be looked to in resolving those
disputes, the litigants are in partial but not total accord.
They agree that Illinois law applies to Lexent's claims for
unlawful conversion and unjust enrichment, tort claims that are
not controlled by the choice of law provision in Agreement §11.9,
which governs only the "validity and construction of [the]
Agreement."  But Lexent advances, and Annecca opposes, the notion
that the Agreement's choice of law provision does apply to
Annecca's equitable estoppel defense to those tort claims.

Annecca has the better of that dispute.  Just as Lexent's
tort claims do not depend upon the validity or construction of
the Agreement, neither does Annecca's defense to those claims.

15

And the cases Lexent cites for the contrary position do not, as
it presents them, stand for the proposition that any time a
defendant raises the defense of equitable estoppel that defense
must be governed by a choice of law provision in a contract
between the parties.  Rather, in both SLF Ltd. P'ship v.
Molecular Biosys., Inc., No. 01 C 9576, 2003 WL 22859394, at *6,
*9-10 (N.D.Ill. Dec. 2) and Wireless Distribs., Inc. v.
Sprintcom, Inc., No. 03 C 2405, 2003 WL 22175607, at *4, *6
(N.D.Ill. Sept. 19) the defense of equitable estoppel was raised
as to claims that were themselves governed by choice of law
provisions.

By contrast, where as here the parties agree that the choice
of law provision does not apply to the claims themselves, it
follows that the provision cannot apply to a defense that also
does not depend on the construction or validity of the contract
between the parties.  Illinois law will therefore be looked to
both as to Lexent's tort claims and as to Annecca's defense.[6]

---

[6]In any event, the particular source of substantive law that
applies to these claims is not dispositive.  Our Court of Appeals
has subscribed to the proposition that the principles of what
conduct constitutes conversion are universal (FMC Corp. v.
Capital Cities/ABC, Inc., 915 F.2d 300, 302 n. 2 (7th Cir. 1990),
citing and quoting this Court's opinion in P.M.F., Inc. v. Grady,
703 F. Supp. 742, 743 n.1 (N.D.Ill. 1989)), and New York law is
the same as in Illinois (see, e.g., Richardson Greenshields Sec.,
Inc. v. Mir-Hin Lau, 819 F. Supp. 1246, 1268 (S.D.N.Y. 1993)).
Similarly, the elements a plaintiff must show to recover for
unjust enrichment are identical under Illinois and New York law
(see, e.g., Bancinsure v. BMB Elec. Co., No. 03 C 2692, 2004 WL
765124, at *3 (N.D. Ill. Apr. 8) and Hutton v. Klabal, 726 F.

16

And even though such a sequence might be thought of as placing the cart before the horse, the fact that Annecca's defense would scotch both of Lexent's tort claims if it were successful leads this Court to address the equitable estoppel issue first.

Equitable Estoppel

Annecca Mem. 37 argues that Lexent should be equitably estopped from attempting to recoup the cost of the computer equipment that it provided to Annecca, because Lexent instructed Annecca to discard Annecca's existing equipment. In that respect the only relevant factual dispute centers on whether Annecca discarded the equipment of its own accord or whether it was directed to do so by Lexent.

For its part Annecca contends that a Lexent representative told Andrew Denon ("Denon") to discard the old computer server after it had been dismantled following installation of the new computer servers (A. St. ¶14; A. Ex. I). Even though Lexent asserts that the consultant hired by Annecca disposed of the old equipment pursuant to Denon's instructions, it has produced no evidence to rebut Annecca's claim that Denon originally received such a directive from Lexent representatives. So Lexent has

Supp. 67, 72 (S.D.N.Y. 1989)). And the elements of equitable estoppel in Illinois are substantially identical to those under New York law (see, e.g., Michaels v. Travelers Indem. Co., 683 N.Y.S.2d 640, 641-42 (App. Div. 1999) and Campos v. Campos, 342 Ill. App.3d 1053, 1066, 796 N.E.2d 1101, 1112 (1st Dist. 2003)).

failed to raise a genuine issue of material fact as to whether the instruction to discard the old equipment originated with its representatives, an issue that must be viewed in Annecca's favor on Lexent's Rule 56 motion. But as indicated in the preceding paragraph, that makes no difference, for upon examination Annecca's equitable estoppel defense fails as a matter of law in any event.

To establish equitable estoppel, a party must demonstrate that (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time of making the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to its detriment; and (6) the party claiming estoppel would be prejudiced by its reliance on the representations if the other party were permitted to deny their truth (Geddes v. Mill Creek Country Club, Inc., 196 Ill.2d 302, 314, 751 N.E.2d 1150, 1157 (2001)). In this instance Annecca falls at the very first of those hurdles, and that alone torpedoes its claim.

Annecca's fatal shortcoming in that regard is that the record neither shows nor, for that matter, even suggests that

Lexent misrepresented or concealed anything. While the claimed representation or conduct "need not be fraudulent in the strict legal sense or done with an intent to mislead or deceive" (<u>Ceres Ill., Inc. v. Ill. Scrap Processing, Inc.</u>, 114 Ill.2d 133, 148, 500 N.E.2d 1, 7 (1986)), a party claiming estoppel must at least demonstrate that a fraudulent or unjust effect results from the other party's conduct (<u>Dill v. Widman</u>, 413 Ill. 448, 456, 109 N.E.2d 765, 769 (1953)).

Here Lexent's instruction to Annecca to discard its old computer server was given in accordance with its belief that the acquisition would proceed as outlined in the Agreement. It can scarcely be faulted for insisting on installing new computer servers and discarding the old so that it could hit the ground running when the deal closed,[7] and its demand for recoupment when the acquisition failed because of Annecca's conduct surely cannot be considered fraudulent or unjust.

Because Annecca has failed to establish any misrepresentation on Lexent's part, its equitable estoppel defense thus fails as a matter of law, and its Rule 56 cross-

---

[7]Just as with the professional fees expended by Lexent before terminating the Agreement, it is worth observing that Lexent's conduct in replacing the computer servers is especially powerful evidence that it not only entered into the Agreement but also moved forward toward completion of the acquisition in good faith until it learned of America's breaches. Here too it can scarcely be suggested that Lexent provided the equipment simply in the hope and expectation of acquiring a claim against Annecca to recover its cost.

motion is denied.  This opinion turns then to Lexent's two
theories for recovering its outlay.

Conversion

      As for Lexent's claim that Annecca improperly converted the
computer equipment, its theory (while not explicitly set out as
such) is essentially that a bailment was created when Lexent had
the new computer servers delivered to Annecca's offices.  To be
sure, there was no express agreement regarding those servers, but
the agreement of the parties to a bailment is implied in law
where (as here) the property of one person is voluntarily
received by another for some purpose other than that of obtaining
ownership (American Ambassador Cas. Co. v. City of Chicago, 205
Ill. App. 3d 879, 882, 563 N.E.2d 882, 885 (1st Dist. 1990)).
Lexent did not of course deliver the servers to Annecca intending
that they become Annecca's property.  It was rather in
anticipation of its acquiring ownership of Annecca that Levent
delivered the servers to be installed for its own use after
completion of the acquisition (L. St. ¶26; A. St. ¶11).  Annecca
was therefore in possession of the equipment as a bailee.

      Restatement (Second) of Torts ("Restatement") §237 (1965)
teaches that a bailee who on demand refuses, without proper
qualification, to surrender property to a party entitled to its
immediate possession is liable for conversion.  But Restatement
§238 goes on to state that the bailee is not liable if it makes a

qualified refusal in circumstances where the demand for immediate
surrender is unreasonable.  When the record is viewed in the
light most favorable to Annecca, there appears to be a genuine
factual issue as to whether Lexent's demand for immediate
surrender was unreasonable in light of its previous instruction
to Annecca to dispose of the old hardware.  On that premise
Lexent would not be entitled to summary judgment under its
conversion theory.

Unjust Enrichment

      But what has just been said does not get Annecca home free,
for the same facts (again reviewed from a pro-Annecca
perspective) readily support Lexent's claim for relief based on
principles of unjust enrichment.  Under Illinois law a plaintiff
states a cause of action for unjust enrichment by demonstrating
that defendant "unjustly retained a benefit to the plaintiff's
detriment, and that defendant's retention of the benefit violates
fundamental principles of justice, equity and good conscience"
(HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., 131 Ill.2d
145, 160, 545 N.E.2d 672, 679 (1989)).

      Even when Annecca's claim that Lexent instructed it to
dispose of its old equipment is credited, the fact remains that
Annecca has obtained a brand new computer server that is now
"critical to [its] business" (L. St. ¶30), but for which it has
never paid a cent.  Lexent has agreed to deduct from its recovery

21

the cost of equipment that Annecca claims not to have received, as well as the expenses incurred by Annecca in installing the new equipment. There is no warrant for Annecca's refusal to pay for the cost of the new equipment itself, and to allow it to avoid payment would be to enrich Annecca unjustly at Lexent's expense.

Accordingly Lexent is entitled to summary judgment as to the unjust enrichment claim. Annecca is ordered to pay Lexent the net sum of $50,147 (nothing in Annecca's submission has challenged the accuracy of that amount).

### Conclusion

Because no genuine issue of material fact exists as to Annecca's obligation under Agreement §10.2(a) to indemnify Lexent as to the bulk of the professional fees for which it claims recovery, Lexent is entitled to a judgment as a matter of law in the amount of $282,277.47 on Count II of its Counterclaim.[8] Annecca's equitable estoppel defense as to Counts III and IV of Lexent's Counterclaims fails as a matter of law, and its Rule 56 Motion is denied. Finally, because Annecca has been unjustly enriched as a matter of law in its retention of the computer equipment provided by Lexent, although there is a genuine issue of material fact as to whether such retention involved a conversion of the equipment, Lexent's motion for summary judgment

---

[8]As stated earlier, that also subsumes Lexent's Count I claim.

as to Count IV is granted, while its motion as to Count III is denied.  Lexent is entitled to a judgment as a matter of law in the amount of $50,147 on Count IV.

In sum, Annecca is ordered to pay Lexent $332,424.47 on its Counterclaim.  And because that resolved the only remaining issues in the case, this is a final judgment.

_____
Milton I. Shadur
Senior United States District Judge

Date:  November 16, 2004